(No. 53514.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. HARLAN D. SEARLE, Appellee.

*Opinion filed September 30, 1981.*

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant.

William H. Herring, of Peoria, for appellee.

MR. JUSTICE SIMON delivered the opinion of the court:

The State Police stopped Harlan Searle, a motorcyclist, for a traffic violation, found that the engine of his motorcycle did not bear a legible manufacturer's identification number as required by law, and seized the motorcycle. Searle attempted, through the Secretary of State's office, to have the proper number affixed to the motorcycle, which had been rebuilt out of several used parts, including a used

engine, so that he might have it back. The police responded that they were holding it as evidence for a criminal complaint against Searle. Eventually, he was tried and found guilty of the misdemeanor of unknowingly possessing a vehicle without a required identification number. However, the court then realized that the case had been brought in the wrong county, the one in which the State Police headquarters was located rather than the county in which he was stopped, and the complaint was dismissed. The State's Attorney in the proper county refused to proceed against Searle. Next came an application by the State to the circuit court of Woodford County under section 4—107(i) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(i)) for an order to sell the motorcycle. Had the proper number for the engine been impossible to determine, the motorcycle would have been subject to forfeiture; but Searle, by going back through the chain of title, proved what the number should be. Accordingly, the circuit court of Woodford County ordered the police to stamp the number on the cycle and return it to Searle.

The State, however, asserted that under section 4—207 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 4—207) Searle could not get the vehicle back without first paying the storage charges for the time the police had held it. The police had stored it in a commercial garage at high daily rates, and as the two trials, despite Searle's demand for speedy disposition, had produced a long delay, the storage charges amount to several thousand dollars, probably more than the value of the motorcycle. The circuit court of Woodford County held section 4—207 unconstitutional as a deprivation of due process, and ordered the vehicle returned to Searle without charge. The State appeals directly to this court under Supreme Court Rule 302(a)(1) (73 Ill. 2d R. 302(a)(1)).

The State's claim to storage charges rests on section 4—207 of the Illinois Vehicle Code, which provides:

"Reclaimed vehicles—Expenses. Any time before a vehicle is sold at public sale or disposed of as provided in Section 4—208, the owner or other person legally entitled to its possession may reclaim the vehicle by presenting to the law enforcement agency having custody of the vehicle proof of ownership or proof of the right to possession of the vehicle. No vehicle shall be released to the owner or other person under this Section until all towing and storage charges have been paid." (Ill. Rev. Stat. 1977, ch. 95½, par. 4—207.)

As we interpret the Code, section 4—207 does not apply to the present case. There is therefore no need to consider whether it is constitutional.

All the statutory provisions involved in this case are found in chapter 4 of the Vehicle Code. That chapter is divided into three articles. Article III is about the Vehicle Recycling Board, and is irrelevant to this dispute. Section 4—207, the one dealing with payment of storage charges, is part of article II, entitled "Abandoned, Lost, Stolen, or Unclaimed Vehicles." Article II prescribes, in more or less chronological order, a coherent scheme for handling such vehicles, that is to say, vehicles that have somehow gotten separated from their owners. Vehicles are not to be abandoned (Ill. Rev. Stat. 1977, ch. 95½, par. 4—201). Stray vehicles are to be towed into custody (Ill. Rev. Stat. 1977, ch. 95½, pars. 4—202, 4—203), and a report made (Ill. Rev. Stat. 1977, ch. 95½, par. 4—204). Various officials try to discover and notify the owner. (Ill. Rev. Stat. 1977, ch. 95½, pars. 4—205, 4—206.) The vehicle may be reclaimed upon proof of ownership (or other right to possession), but towing and storage charges must first be paid (Ill. Rev. Stat. 1977, ch. 95½, par. 4—207, the provision at issue). If nobody claims the vehicle, it is sold. (Ill. Rev. Stat. 1977, ch. 95½, pars. 4—208, 4—209.) In either case, another report is made. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—210.) The proceeds of the sale are disposed of (Ill. Rev. Stat. 1977, ch. 95½, par. 4—211), and the buyer gets a certificate of title (Ill. Rev.

Stat. 1977, ch. 95½, par. 4—212).

Searle's motorcycle was not an abandoned, lost, stolen, or unclaimed vehicle. All the legal proceedings in this case have arisen not under article II but under article I, entitled "Anti-Theft Laws." Article I, prescribes, *inter alia*, a program of identification numbers. The manufacturer must affix such numbers. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(g).) If a vehicle is discovered without required numbers, it is seized and held for identification. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(i).) The State Police reaffix the number, if possible. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(h).) If the proper number cannot be ascertained, the vehicle is considered contraband, and sold. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(i).) In any event, possession of a vehicle without a number is an offense, a felony if knowing (Ill. Rev. Stat. 1977, ch. 95½, par. 4—103(d)), a misdemeanor if unknowing (Ill. Rev. Stat. 1977, ch. 95½, par. 4—102(d)).

Nothing in the organization or language of the Code suggests that the last sentence of section 4—207, an integral part of article II, has any application in a proceeding under article I. On the contrary, section 4—207 as a whole obviously does *not* apply to this case: Searle was not able, as contemplated by section 4—207, to reclaim his property "[a]ny time *** by presenting *** proof of ownership ***." And section 4—207 itself limits its demand for payment of towing and storage charges to vehicles released to the owner "under this Section," thereby implying that vehicles may be released under other parts of the Code without payment of such charges. Moreover, section 4—107(i), in dealing with the sale of a vehicle for which the proper number cannot be ascertained, provides *expressly* that the proceeds of the sale are to be disposed of in accordance with section 4—211, a part of article II (under which towing, storage, and processing charges are paid off the top, and the balance goes to the municipality or county). If the procedures of article II were intended to spill over generally to article I, that express incorporation by refer-

ence would have been unnecessary.

Requiring Searle to pay storage charges before he can get his motorcycle back upsets the plan of article I. The legislature has established a penalty for possessing a vehicle without a number. The maximum fine is set at $1,000—assuming the defendant is convicted. But under the State's view of the law, that is an illusion; the $1,000 is only the beginning; in addition to the official criminal fine, the owner must pay storage charges amounting, probably, to more than the fine, and this even if the criminal case ends in his favor, as here. The legislature has provided that a vehicle is to be forfeited only if its number cannot be ascertained. But under the State's view, the vehicle is effectively forfeited, in that the accrued charges exceed its value, whenever the legal proceedings take a long time. The statute (Ill. Rev. Stat. 1977, ch. 95½, par. 4—107(i)) provides that the State's Attorney is to ask the court for an order to sell the vehicle only after the criminal case, in which the vehicle is evidence, is finished. The delays, therefore, are caused not only by the necessities of the identification process but by the criminal process. In the State's view, the defendant is in effect to pay for storage of the evidence against him—even if he is acquitted. This is neither a reasonable interpretation of the statute nor a sensible result.

Section 4—207's provision for payment of charges may make sense in its proper context, namely the reclaiming of a mislaid vehicle after a short delay and correspondingly modest charge. In the present context of a long adversary proceeding, it makes no sense. It is not in article I; it does not belong in article I; and we will not read it into article I.

The motorcycle must be returned to its owner without charge, as the circuit court ordered, though for different reasons.

The judgment of the circuit court of Woodford County is affirmed.

*Judgment affirmed.*